23CA1750 Peo v Kaiser 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1750
City and County of Denver District Court No. 21CR3017
Honorable Eric M. Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mario L. Kaiser,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Mario L. Kaiser, appeals the trial court's judgment of conviction entered on a jury verdict finding him guilty of distributing a controlled substance and possession with intent to distribute a controlled substance.  We affirm.

## I.     Background

¶ 2     In May 2021, Detective Michael Traudt, who was acting undercover, saw Eddie Dechant approach Kaiser, who was sitting on a planter box at Union Station.  In exchange for cash, Kaiser gave Dechant small plastic bags.  Dechant put the bags in his pocket and walked away.

¶ 3     Traudt radioed uniformed officers, who responded to the location.  Officer Kelly Boyd and her partner stopped Dechant. Officer Boyd's partner searched Dechant and told Boyd that he found methamphetamine on Dechant.

¶ 4     Around the same time, Officer Aaron Carlson approached Kaiser.  Carlson noticed that Kaiser was holding a "black mesh-type item" in his hand but placed it behind him in the planter box. Carlson retrieved the bag, which contained suspected narcotics, from the planter box.

¶ 5    Carlson also found Kaiser's cell phone and a cigarette pack containing additional suspected narcotics in the planter box near Kaiser. Additionally, the officers found a large amount of cash on Kaiser's person.

¶ 6    After they were confiscated, the suspected narcotics recovered from Kaiser and Dechant were packaged and put into four red envelopes labeled Exhibit 1, Exhibit 2, Exhibit 3, and Exhibit 4.[1] Detective Andrew Carman transported the exhibits to the Property and Evidence Bureau, and the contents were then tested by the forensic laboratory.

¶ 7    A forensic scientist, Jason Lehn, tested the exhibits. Exhibit 1 (the drugs collected from Dechant) tested positive for methamphetamine; Exhibit 2 (the suspected Xanax pills recovered from the cigarette pack next to Kaiser) tested negative for any controlled substance; Exhibit 3 tested positive for heroin and fentanyl; and Exhibit 4 tested positive for methamphetamine.

---

[1] Exhibits 1 and 4 were labeled as suspected methamphetamine, Exhibit 2 was labeled as suspected Xanax, and Exhibit 3 was labeled as suspected heroin.

¶ 8    Kaiser was charged with (1) distribution of methamphetamine; (2) possession with intent to distribute methamphetamine; and (3) possession with intent to distribute heroin and/or fentanyl.[2]  At trial, defense counsel objected to admitting Exhibit 1, arguing lack of foundation.  Defense counsel also objected to admitting Exhibit 2, which had tested negative for any controlled substance, arguing that it lacked relevance and that its admission was prejudicial.

¶ 9    After the prosecution laid more foundation, the court admitted both exhibits.  With respect to Exhibit 1, the court found that the prosecution established, by a preponderance of the evidence, that the methamphetamine collected from Dechant related to Kaiser's case.  With respect to Exhibit 2, the court found that, because the test didn't come back positive for any controlled substance, its admission wouldn't be prejudicial.

¶ 10    After a two-day trial, a jury convicted Kaiser of possession of methamphetamine with intent to distribute and distribution of methamphetamine, but it acquitted him of possession with intent to

---

[2] The prosecution also charged Kaiser with an additional count of possession with intent to distribute alprazolam, but it was dismissed before trial.

distribute heroin and/or fentanyl. The trial court sentenced Kaiser to four years in prison.

## II.    Analysis

¶ 11    Kaiser claims that the trial court erred by (1) admitting Exhibit 1 because the chain of custody was insufficient to establish that this was the methamphetamine that Dechant had purchased from Kaiser; and (2) admitting Exhibit 2 in violation of CRE 401, 403, and 404. We disagree with and address each contention in turn.

### A.    The Trial Court Didn't Err by Admitting Exhibit 1

¶ 12    Kaiser argues that the trial court erred by admitting Exhibit 1 because the prosecution failed to sufficiently establish its chain of custody. We aren't persuaded.

#### 1.    Standard of Review and Applicable Law

¶ 13    A district court's decision to admit evidence is reviewed for an abuse of discretion and will be overturned only if the decision was arbitrary, unreasonable, or unfair. *People v. Clark*, 2015 COA 44, ¶ 107.

¶ 14    Under CRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in

4

question is what its proponent claims." Where the prosecution has sought to authenticate drug evidence, the supreme court and divisions of this court have required a showing of a sufficient chain of custody. *People v. Rodriguez*, 2022 COA 11, ¶ 22 (collecting cases).

¶ 15 "The chain of custody rule requires that the proponent of real evidence establish that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged." *People v. Mascarenas*, 666 P.2d 101, 112 (Colo. 1983). "To do so, the proponent must introduce evidence showing where the item has been from its initial seizure until it is offered at trial." *Rodriguez*, ¶ 23. Even if there's some confusion concerning the chain of custody, the evidence may still be deemed authentic under CRE 901(a) so long as it was always accounted for. *People v. Atencio*, 565 P.2d 921, 923 (Colo. 1977).

¶ 16 Speculation about the possibility of tampering is insufficient to establish a break in the chain of custody. *People v. LeMasters*, 666 P.2d 573, 577 (Colo. App. 1983), *aff'd*, 678 P.2d 538 (Colo. 1984). And absent any evidence of tampering or a lack of authentication, the proponent of the evidence isn't required to call each witness

who may have handled the item. *People v. Sutherland*, 683 P.2d 1192, 1197 (Colo. 1984).

## 2. Discussion

¶ 17    Kaiser argues that the prosecution didn't establish that Exhibit 1 contained the methamphetamine that officers collected from Dechant. In support, Kaiser cites *Rodriguez*. In that case, the arresting officer testified that he gave a bag of suspected narcotics to his partner but didn't know where the bag had been until he identified it at trial. *Rodriguez*, ¶¶ 7, 19. Similarly, the testifying chemist didn't know who put the narcotics into evidence or where they were prior to arriving at the laboratory for testing. *Id.* at ¶ 9. This case differs from *Rodriguez*. The officers and lab technician who testified accounted for Exhibit 1 from the time it was collected from Dechant until it made its appearance at trial.

¶ 18    Kaiser asserts that the officer who searched him didn't testify at trial. Kaiser also contends that, while Carman packaged and took the suspected narcotics to the Bureau, he couldn't explain why his name appeared on a tag at the top of Exhibit 1 when he didn't sign the package.

¶ 19    First, the absence of testimony from every individual who handled the evidence doesn't, by itself, establish a break in the chain of custody.  *Sutherland*, 683 P.2d at 1197.  Boyd testified that her partner — likely Officer Nate Trobe — collected methamphetamine from Dechant.  She also testified that methamphetamine was the only drug recovered from Dechant and that it was "given to another officer to be transported to property to be booked as evidence."

¶ 20    Second, Carman explained that the officers worked as a team and that "one person handles the arrest, one person handles the paperwork, one person handles the evidence."  Carman testified that his "job that day was to take possession of all the evidence of the case, take it down to the property bureau and book it."  Carman verified that Trobe packaged, sealed, and signed Exhibit 1 and that when Carman received it, the envelope had a case number and officer badge number and was labeled as "suspected methamphetamine – Dechant."

¶ 21    Carman couldn't explain why his name appeared on a printed label at the top of Exhibit 1 when Trobe's signature appeared on the envelope, but the discrepancy has no bearing on the chain of

7

custody. Likewise, Carman couldn't explain why he had signed the envelopes for Exhibits 2, 3, and 4, but not Exhibit 1. But Kaiser doesn't provide evidence that Exhibit 1 was altered, substituted, or otherwise tampered with. Instead, he speculates that because Boyd's partner didn't testify and Carman signed all the exhibits except for Exhibit 1, there was a break in the chain of custody. But such speculation is insufficient to undermine the chain of custody or Exhibit 1's authentication.

¶ 22 Third, the forensic scientist, Lehn, described his process to preserve and track trial exhibits and testified that he received Exhibit 1, which remained in the laboratory's possession for testing. He also testified that he opened the seal of Exhibit 1 to test its contents and then resealed, signed, and dated the envelope to ensure that Exhibit 1 wasn't tampered with after he tested it.

¶ 23 Finally, we reject Kaiser's hearsay argument.[3] Kaiser claims that although Carman testified that there was a booking date and

---

[3] "Hearsay" is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay statements are generally inadmissible at trial unless an exception applies. CRE 802.

case number written on Exhibit 1, he didn't testify that he wrote the information.  Therefore, the argument goes, the court relied on Carman's hearsay testimony to account for the time when the contents were seized from Dechant and placed in Exhibit 1 until Carman received them.  And hearsay alone can't be used to establish the chain of custody.  *See Rodriguez*, ¶ 19 (concluding that evidence couldn't be authenticated by officer's testimony at trial when he didn't have personal knowledge of what happened to the drugs after they were seized).

¶ 24     As an initial matter, Kaiser's hearsay claim is unpreserved, so we review for plain error.  *See Hagos v. People*, 2012 CO 63, ¶ 14 ("We reverse under plain error review only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005))).

¶ 25     Unlike the officer in *Rodriguez*, the testifying law enforcement officers who handled Exhibit 1 in this case had personal knowledge of its chain of custody and how the drugs collected from Dechant ended up in the exhibit.  As mentioned, based on her personal knowledge, Boyd testified that the methamphetamine found on

Dechant was collected at the scene and subsequently transported for booking into evidence. Carman also identified Exhibit 1 by confirming that he was referring to the same exhibit that Boyd had described and explaining that Trobe's signature indicated that he had packaged the drugs in the evidence bag and sealed it. *See Rodriguez*, ¶ 29 (officer's testimony, based on personal knowledge, that a different officer placed drugs into the evidence bag, sealed it, and made identifying marks would constitute sufficient chain of custody evidence). Lehn likewise testified that Exhibit 1 was the same exhibit that the laboratory received and that he tested. Thus, even if Carman didn't write down the booking date or case number on Exhibit 1, the chain of custody was independently established with testimony from multiple witnesses who had personal knowledge of the exhibit at different stages of its handling.

¶ 26 Finally, even if the hearsay question was a close call, we certainly can't say that the trial court *obviously* erred by failing to sua sponte raise a hearsay concern and exclude Exhibit 1 on that basis. *See Hagos*, ¶ 18.

¶ 27    Because there's ample evidence in the record that the chain of custody wasn't broken, the trial court didn't abuse its discretion by admitting Exhibit 1.

### B.    The Trial Court Didn't Err by Admitting Exhibit 2

¶ 28    Recall that Exhibit 2 contained pills (thought to be Xanax) that officers recovered from the cigarette pack in the planter next to Kaiser.  But the pills didn't test positive for any controlled substance.  Because he wasn't charged with possession or distribution of Xanax, Kaiser claims Exhibit 2 was irrelevant and prejudicial and should've been excluded.  We're unpersuaded.

### 1.    Standard of Review and Applicable Law

¶ 29    "Trial courts have broad discretion in determining the admissibility of evidence based on its relevance, its probative value, and its prejudicial impact." *People v. Elmarr*, 2015 CO 53, ¶ 20. We review a court's evidentiary rulings for an abuse of discretion. *Rojas v. People*, 2022 CO 8, ¶ 16.  A court abuses its discretion when its ruling is based on an erroneous view of the law or is manifestly arbitrary, unreasonable, or unfair.  *Elmarr*, ¶ 20.

¶ 30    We review preserved claims of nonconstitutional trial error for harmless error.  *Hagos*, ¶ 12.  "Under th[at] standard, reversal is

required only if the error affects the substantial rights of the parties.  That is, we reverse if the error 'substantially influenced the verdict or affected the fairness of the trial proceedings.'"  *Id.* (citations omitted).

¶ 31    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.  All relevant evidence is admissible, except as otherwise provided by constitution, statute, or rule.  CRE 402; *Rojas*, ¶ 25.  But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  CRE 403.

¶ 32    Additionally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."  CRE 404(b)(1).  The application of CRE 404(b) depends, in part, on whether the proffered evidence of uncharged conduct is intrinsic or extrinsic to the charged crimes.  *Rojas*, ¶¶ 42, 44, 52.

¶ 33    If the evidence is intrinsic — meaning the evidence directly proves the charged offense or occurred contemporaneously with it

12

and facilitated its commission — then it may be admitted under general relevance principles. *Id.* But if the evidence doesn't meet these criteria, then it is extrinsic and its admission is governed by CRE 404(b) and the four-factor analysis outlined in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).[4] *Rojas*, ¶ 52.

## 2. Discussion

¶ 34    The prosecution claimed that Kaiser was dealing a variety of drugs under the "ice cream shop" theory and that, while it wasn't charging him with possessing or distributing Xanax, the pills were "relevant as to whether or not he was actually distributing narcotics."[5] *See id.*

---

[4] Under *People v. Spoto*, a court considers whether (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) that relevance is independent of the prohibited inference that the defendant has a bad character and acted in conformity with that character; and (4) the evidence's probative value isn't substantially outweighed by the risk of unfair prejudice. 795 P.2d 1314, 1318 (Colo. 1990).

[5] At trial, Traudt explained that "[i]n open air drug markets, you . . . don't know what people are going to ask for. So you'll commonly see dealers with multiple kinds of drugs on them, just so that they can accommodate the user." He likened the dealer's approach to being like an "ice cream store" that wouldn't be successful if it carried only one flavor.

¶ 35 Based on the prosecution's theory that Kaiser was dealing several drugs on the day that he was arrested, and because the pills were recovered during the same encounter that gave rise to the charged offenses, Exhibit 2 was intrinsic evidence.

¶ 36 As intrinsic evidence, Exhibit 2 was admissible if relevant and not unfairly prejudicial. *People v. Ray*, 2025 CO 42M, ¶ 59. Here, both requirements were satisfied. Exhibit 2 was relevant because it supported the prosecution's theory that Kaiser possessed and was distributing multiple types of drugs, and Exhibit 2 made that theory more probable. Similarly, Exhibit 2 wasn't unfairly prejudicial under CRE 403 because the jury was told that Exhibit 2 tested negative for any controlled substance and that Kaiser was never charged with possession or distribution of Xanax. Thus, the danger of unfair prejudice didn't substantially outweigh the exhibit's probative value.

¶ 37 Even if Exhibit 2 was improperly admitted, any error would've been harmless. As mentioned, Kaiser wasn't charged for possessing the pills, and the jury heard that the substance wasn't a controlled substance. Finally, the jury returned a split verdict, which indicates that it separately evaluated all evidence.

¶ 38 We discern no error with the trial court's decision to admit Exhibit 2 because it didn't substantially influence the verdict or impair the fairness of the proceedings.

### III. Disposition

¶ 39 We affirm the judgment.

JUDGE PAWAR and JUDGE SULLIVAN concur.